**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

DR. XIMENA P. GALARZA-RIOS, MD,

        Plaintiff,

v.                                                                    Case No. 1:20-cv-813-WJ-CG

OPTUMCARE NEW MEXICO, LLC,
and OPTUMCARE MANAGEMENT,
LLC

        Defendant.

_____

OPTUMCARE MANAGEMENT, LLC,     [CONSOLIDATED]
                                   Case No. 1:20-cv-00900
        Plaintiff,

v.

DR. XIMENA P. GALARZA-RIOS,

        Defendant.

**AMENDED COMPLAINT FOR DECLARATORY**
**JUDGMENT AND INJUNCTIVE RELIEF**

      Plaintiff Dr. Ximena Galarza-Rios, MD, by and through counsel, Jackson Loman

Stanford & Downey, P.C. (Travis G. Jackson and Sarah K. Downey) respectfully submits

this Amended Complaint for Declaratory Judgment and Injunctive Relief against

Defendants OptumCare New Mexico, LLC and OptumCare Management, LLC

(collectively "Optum"), and states as follows:

1

### INTRODUCTION

1.      This action for declaratory judgment arises from Optum's unlawful threat to enforce a 2012 "Noncompetition" agreement against Plaintiff and other New Mexico health care professionals.  Plaintiff is an Albuquerque family practice physician who has treated New Mexico patients for nearly 20 years.  Defendants are subsidiary affiliates of the world's largest health care company – an international conglomerate that recently acquired the medical group previously known as ABQ Health Partners and later DaVita. New Mexico is a medically underserved state, and New Mexico law expressly prohibits non-compete provisions that attempt to restrict the rights of physicians to practice in New Mexico.  NMSA § 24-1I-2(A) ("A non-compete provision [that] restricts the right of a health care practitioner to provide clinical health care services in this state [is] unenforceable.").  Plaintiff never entered into or agreed to any non-compete contract with the Defendants, nor did Plaintiff consent to the assignment of the 2012 Noncompetition Agreement to Defendants.

2.      Plaintiff seeks a judgment from this Court declaring that: (1) the 2012 Noncompetition Agreement is not valid or unenforceable; (2) enforcement of the 2012 Noncompetition Agreement would be illegal, unconscionable and contrary to New Mexico public policy; (3) that Plaintiff and other similarly situated health care providers have the freedom to decide where they work and treat New Mexico patients without fear of harassment by the Defendants and their affiliates; and (4) that Defendants' attempts to enforce the 2012 Noncompetition Agreement are an unlawful restraint of trade in

violation of New Mexico law. *See, e.g.,* The New Mexico Antitrust Act (NMAA), NMSA N§ 57-1-1 ("Every contract, agreement, combination or conspiracy in restraint of trade or commerce, any part of which trade or commerce is within this state, is unlawful.").

3.    Plaintiff further seeks a preliminary and permanent injunction that (a) prohibits Defendants from threatening New Mexico physicians, including the Plaintiff, with lawsuits and other enforcement actions in reliance on the 2012 Noncompetition Agreement; and (b) prohibits Defendants from interfering with the right of New Mexico families to choose where they seek health care.

**JURISDICTION AND VENUE**

4.    Plaintiff is a licensed physician who has practiced family medicine in Albuquerque, New Mexico since 2003. Plaintiff is a resident of Bernalillo County.

5.    Defendant OptumCareNM is a limited liability company that provides health care services in Bernalillo County, New Mexico.

6.    Defendant OptumCare Management LLC is a limited liability company that conducts business in New Mexico.

7.    This Court has personal jurisdiction over the parties and venue is proper in this Court.

ALLEGATIONS COMMON TO ALL COUNTS

A.    **New Mexico is Medically Underserved and Suffers from a Shortage of Health Care Professionals**

8.      The Health Resources and Services Administration (HRSA) is an agency of the U.S. Department of Health and Human Services.  HRSA is the primary federal agency tasked with improving access to health care services for people who are uninsured, isolated or medically vulnerable.

9.      Medically Underserved Areas/Populations are areas or populations designated by HRSA as having too few primary care providers, high infant mortality, high poverty, or a high elderly population.

10.     HRSA has designated much of New Mexico, including parts of Bernalillo Count, to be Medically Underserved Areas and Medically Underserved Populations.

11.     Health Professional Shortage Areas identify geographic areas, populations groups, or facilities within the United States that are experiencing a shortage of health care professionals.

12.     HRSA has designated much of New Mexico, including parts of Bernalillo Count, to be Health Professional Shortage Areas.

13.     New Mexico struggles to recruit and retain physicians to adequately and promptly provide health care to its citizens, particularly in areas impacted by poverty.

14.     A significant portion of New Mexico citizens receive health care funded by public payors like Medicare and Medicaid.  This results in lower fees collected for

medical services, and lower salaries paid to New Mexico physicians compared to surrounding states.

15.     Family practitioners are among the lowest paid physicians in New Mexico.

16.     Plaintiff has historically practiced family medicine in Bernalillo County's most impoverished areas, including Albuquerque's West Mesa and South Valley.

17.     Business strategies employed by private, for-profit health care systems to restrict competition through non-compete agreements cause New Mexico physicians to relocate out-of-state, and impair the ability of New Mexico citizens to obtain prompt and adequate health care.

18.     To protect the rights of New Mexico physicians and their patients, the New Mexico Legislature declared in 2015 that non-compete provisions that attempt to restrict the rights of a health care practitioner to provide clinical health care services in this state are unenforceable.  N.M.S.A. § 24-1I-2.

**B.     UnitedHealth is the World's Largest Healthcare Company**

19.     Defendanst are subsidiary affiliates of the national healthcare conglomerate UnitedHealth Group ("United").  United is a publicly-traded, for-profit health system that generated approximately $242 billion dollars in revenue in 2019.  United is the world's largest healthcare company by revenue, and ranked number six on the 2019 Fortune 500.  United's CEO was paid $18.9 million in 2019.

20.     United is in the business of selling both health insurance products and medical services in New Mexico.  United sells health insurance products under its "UnitedHealthcare" brand.  United sells medical care services under its "Optum" brand.

21.     Optum has acquired many national and regional medical groups in recent years.  Optum is the largest medical group in the United States.  Optum's revenues increased 12% in 2019 to $113 billion.

22.     Defendants are subsidiary affiliates of Optum, which is a division of United (all collectively referred to herein as "United/Optum.")

**C.     2012 Noncompetition Agreement Invalid on its Face**

23.     This lawsuit arises from United/Optum's threat to enforce a 2012 "evergreen" "noncompetition" agreement against Plaintiff Dr. Ximena Galarza-Rios and other health care providers practicing in Bernalillo County.

24.     Defendants are not named parties to the 2012 Noncompetition Agreement.

25.     United/Optum did not operate in New Mexico in 2012.

26.     The 2012 Noncompetition Agreement is instead an agreement between Plaintiff and HealthCare Partners, LLC, a former affiliate of ABQ Health Partners.

27.     The ownership, management, and control of ABQ Health Partners and its affiliate has changed at least twice since 2012.  ABQ Health Partners was first acquired by DaVita Medical Group ("DaVita").  DaVita was later acquired by United/Optum in 2019, at which point DaVita was rebranded as Optum.

28.    A contract for personal services cannot be assigned unless (a) the contract contains an express provision permitting assignment; or (b) both sides expressly consent to the assignment.

29.    The 2012 Noncompetition Agreement does not provide for or consent to an assignment to any purchaser of or successor to ABQ Health Partners or its affiliate.

30.    Plaintiff never consented to an assignment of the 2012 Noncompetition Agreement to DaVita.

31.    Plaintiff never entered into any non-compete agreement with DaVita, and never received any consideration from DaVita for any such agreement.

32.    By the time that United/Optum purchased DaVita in 2019, the New Mexico Legislature had long since prohibited health care systems from imposing non-compete provisions on physicians practicing in the State of New Mexico.  NMSA § 24-1I-2(A).

33.    Plaintiff never consented to an assignment of the 2012 Noncompetition Agreement to United/Optum.

34.    Plaintiff never entered into any non-compete agreement with United/Optum, and never received any consideration from United/Optum for any such agreement.

35.    New Mexico law does not permit a corporate health care system, or the various companies who later acquire it, to permanently and indefinitely restrict a physician's ability to practice medicine in New Mexico under a purported "evergreen" noncompetition agreement.

36.    New Mexico public policy encourages and endorses a patient's right to choose their health care provider.

37.    New Mexico public policy recognizes a physician's right to practice in New Mexico without restriction by a non-compete provision.

38.    United/Optum has engaged in a pattern of harassment and threats against Plaintiff and other Albuquerque physicians as part of a broader strategy to intimate and deter physicians from exercising their recognized right to practice elsewhere.

39.    United/Optum's strategy is to prevent Albuquerque physicians and their New Mexico patients from leaving United/Optum's integrated health insurance and medical service business, thus trapping them and the revenues they generate from public payors within Unite/Optum's captive system.

40.    In addition to violating New Mexico law and policy, United/Optum's attempt to leverage non-compete provisions to restrict physician and patient choice is an unlawful restraint of trade.  *See, e.g.,* The New Mexico Antitrust Act (NMAA), NMSA N§ 57-1-1 ("Every contract, agreement, combination or conspiracy in restraint of trade or commerce, any part of which trade or commerce is within this state, is unlawful.").

**D.    New Mexico Access to Health Care Is Suffering From a COVID-19 Pandemic**

41.    New Mexico and its citizens are currently suffering from a COVID-19 pandemic.

42.     During the pandemic, United/Optum has threatened multiple Albuquerque physicians with litigation and enforcement of the 2012 Noncompetition Agreement, thus creating a chilling effect on access to health care and patient choice in Bernalillo County.

43.     United/Optum's pattern of harassment and threats against physicians during a pandemic will manifestly tend to injure the public's access to prompt and adequate health care.

44.     It is unconscionable for United/Optum to attempt to restrict the rights of a longstanding New Mexico physician to provide medical care to poor families in Bernalillo County during a pandemic.

## PETITION FOR DECLARATORY JUDGMENT

45.     Pursuant to the New Mexico Declaratory Judgment Act (the "Act"), the Court has the power to declare rights, status and other legal relations in connection with the 2012 Noncompetition Agreement. NMSA § 44-6-2.

46.     The Act empowers this Court to determine the validity and enforceability of the 2012 Noncompetition Agreement, and permits Plaintiff to seek a declaration regarding her rights, status and other legal relations thereunder.  NMSA § 44-6-4.

47.     Plaintiff is a person with an interest in determining whether the 2012 Noncompetition Agreement restricts her rights and status.

48.     There exists an actual controversy regarding the validity and enforceability of the 2012 Noncompetition Agreement.

49.    A declaratory judgment from this Court finding that the 2012 Noncompetition Agreement is not valid or enforceable would terminate the controversy arising from United/Optum's threats to enforce the non-compete provision against Plaintiff and other physicians practicing in New Mexico.  N.M.S.A. § 44-6-7.

50.    For all of the above stated reasons, Plaintiff seeks a judgment from this Court declaring that the 2012 Non-Competition Agreement is void and unenforceable as a matter of law and public policy.  N.M.S.A. § 44-6-4.

51.    Plaintiff seeks a judgment from this Court declaring that enforcement of the 2012 Noncompetition Agreement would be illegal, unconscionable and contrary to New Mexico public policy.

52.    Plaintiff seeks a judgment from this Court declaring that that Plaintiff and other similarly situated health care providers have a recognized statutory right to decide for themselves where they work and treat New Mexico patients without fear of threats and harassment by United/Optum.

53.    Plaintiff seeks a judgment from this Court declaring that that any attempt by United/Optum to enforce the 2012 Noncompetition Agreement would be an unlawful restraint of trade in violation of New Mexico law.  *See, e.g.,* The New Mexico Antitrust Act (NMAA), NMSA N§ 57-1-1 ("Every contract, agreement, combination or conspiracy in restraint of trade or commerce, any part of which trade or commerce is within this state, is unlawful.").

54.     Plaintiff also seeks a preliminary and permanent injunction that (a) prohibits United/Optum from threatening New Mexico physicians, including the Plaintiff, with lawsuits and other enforcement actions in reliance on the 2012 Noncompetition Agreement; and (b) prohibits United/Optum from interfering with the right of New Mexico citizens to choose where they seek health care.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff requests that the Court:

a.     Enter judgment declaring that: (1) the 2012 Noncompetition Agreement is not valid or unenforceable; (2) enforcement of the 2012 Noncompetition Agreement would be illegal, unconscionable and contrary to New Mexico public policy; (3) that Plaintiff and other similarly situated health care providers have the freedom to decide where they work and treat New Mexico patients without fear of harassment by the United/Optum; and (4) that any attempt by United/Optums to enforce the 2012 Noncompetition Agreement is an unlawful restraint of trade in violation of New Mexico law;

b.     Order preliminary and permanent injunction that (a) prohibits the Defendants from threatening New Mexico physicians, including the Plaintiff, with lawsuits and other enforcement actions in reliance on the 2012 Noncompetition Agreement; and (b) prohibits Defendants from interfering with the right of New Mexico citizens to choose where they seek health care;

c.     Award Plaintiff reasonable attorney's fees and costs; and

d.    Order such other and further relief as the Court deems just and proper.

Respectfully submitted,

**JACKSON LOMAN STANFORD & DOWNEY, P.C.**

By: /s/Travis G. Jackson
Travis G. Jackson
Sarah K. Downey
Attorneys for Plaintiff Dr. Ximena Galarza-Rios, MD
201 Third Street NW, Suite 1500
Albuquerque, NM 87102
(505) 767-0577/ (505) 242-9944 fax
travis@jacksonlomanlaw.com
sarah@jacksonlomanlaw.com

## Certificate of Service

I HEREBY CERTIFY that on the 10th day of March, 2021, I filed the foregoing electronically, which caused the following parties or counsel to be served by electronic means, as follows:

Little V. West
Judd West
Holland & Hart LLP
Post Office Box 2208
Santa Fe, NM 87504
110 North Guadalupe, Suite 1
Santa Fe, NM 87501
(505) 988-4421
lvwest@hollandhart.com
jcwest@hollandhart.com

JACKSON LOMAN STANFORD & DOWNEY, P.C.

By: /s/Travis G. Jackson
        Travis G. Jackson