## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DR. XIMENA P. GALARZA-RIOS, MD,

    Plaintiff,

v.                                                      Civ. No. 1:20-cv-00813 MIS/GBW

OPTUMCARE NEW MEXICO, LLC, et al.,

    Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING
### DEFENDANTS' MOTION TO DISMISS

THIS MATTER comes before the Court on Defendants' Motion to Partially Dismiss Counterclaims of Ximena Galarza-Rios, MD. ECF No. 61. Plaintiff responded, and Defendants replied. ECF Nos. 64, 70. Having considered the parties' submissions, the record, and the relevant law, the Court will **GRANT** the Motion **IN PART**.

### BACKGROUND

This case concerns the disputed enforceability of a physician noncompetition agreement, which Plaintiff executed in 2012 with the buyer of ABQ Health Partners. *See* ECF Nos. 1-1 at 3; 61 at 1–2; 64 at 3; *see also* 1:20-CV-00900 WJ/CG ECF No. 1 at 2–3. In July of 2020, Plaintiff filed a complaint in state court asking for, among other things, a declaratory judgment that the noncompetition agreement is not valid or enforceable, and an injunction prohibiting Defendants from pursuing legal action to enforce the agreement. ECF No. 1-1 at 3–4. Defendants removed the case to this Court in August 2020. *See* ECF No. 1.

Separately, in September of that year, Defendant Optumcare Management, LLC, filed a complaint with this Court alleging breach of contract and unjust enrichment. 1:20-

CV-00900 WJ/CG ECF No. 1 at 2–5. The Court consolidated the two cases in March of 2021. *See* ECF No. 35.

In February of 2022, Plaintiff filed an answer in the companion case, including counterclaims for (1) retaliatory discharge, (2) tortious interference with existing contract and prospective business relations, (3) unfair competition, (4) violation of the New Mexico Antitrust Act, and (5) malicious abuse of process. 1:20-CV-00900 WJ/CG ECF No. 23 at 9, 20–23. Defendants now move for dismissal of Plaintiff's second, third, fourth and fifth counterclaims on the basis that they are inadequately pled under Federal Rule of Civil Procedure ("Rule") 12(b)(6). ECF No. 61 at 3; *see also* 1:20-CV-00900 WJ/CG ECF No. 23.

## LEGAL STANDARD

Pursuant to Rule 12(b)(6), a party may move for dismissal of a pleading if the claimant fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not impose a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the claimant's favor, the language of the pleading still "must nudge the claim across the line from conceivable or speculative to plausible." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

**DISCUSSION**

Defendants argue that four of Plaintiff's five counterclaims alleged in her Answer in the companion case, 1:20-CV-00900 WJ/CG ECF No. 23, are inadequately pled under Rule 12(b)(6). ECF No. 61 at 3. Plaintiff, in turn, alleges that all counterclaims meet the *Iqbal/Twombly* plausibility standard. ECF No. 64 at 7–20.

**I.      Plaintiff's Claim for Malicious Abuse of Process**

Plaintiff's Answer in the companion case raises a claim for malicious abuse of process. *See* 1:20-cv-009000 MIS/GJF ECF No. 23. Defendants argue the Court should dismiss this claim, as Plaintiff obtained employment in violation of their contract with her, and their goals in filing the companion case—collecting damages and deterring similar future conduct—are legitimate litigation objectives. ECF No. 61 at 7–8. Plaintiff, meanwhile, maintains that if the 2012 noncompete agreement is found by this Court or a jury to be unenforceable, "[Defendants'] misuse of the legal process to restrict competition in violation of New Mexico law could give rise to claims for malicious abuse of process." ECF No. 64 at 20.

Under New Mexico law, the tort of malicious abuse of process is construed narrowly, "in order to protect the right of access to the courts." *Durham v. Guest*, 204 P.3d 19, 26 (N.M. 2009). A party may be found liable for malicious abuse of process where the following elements are met: "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Id.*

Use of process may be improper where either the complaint itself is not based on probable cause, or there is some "irregularity or impropriety suggesting extortion, delay,

or harassment . . . ." *Id.* (quoting *Fleetwood Retail Corp. of N.M.*, 164 P.3d 31 (N.M. 2007)). For purposes of malicious prosecution, "[t]he lack of probable cause must be manifest." *Fleetwood*, 164 P.3d at 35 (citing *DeVaney v. Thriftway Mktg. Corp.*, 953 P.2d 277, 286 (N.M. 1997) (overruled by *Durham* and abrogated by *Fleetwood*)). "[A]n improper motive by itself cannot sustain a malicious abuse of process claim." *LensCrafters, Inc. v. Kehoe*, 282 P.3d 758, 766 (N.M. 2012).

Here, Plaintiff alleges that Defendants filed their complaint against her "without a reasonable belief in the validity of the allegations of fact or law underlying the complaint," and that their "primary motive in filing this lawsuit [was] to prevent [Plaintiff] and other former ABQ Health Partners physicians from treating New Mexico patients outside of [Defendants'] health system, among other illegitimate ends." 1:20-cv-009000 MIS/GJF ECF No. 23 at 22. Plaintiff's malicious abuse of process claim thus focuses entirely on Defendants' motivations for filing their case. *See* ECF No. 64 at 20; 1:20-cv-009000 MIS/GJF ECF No. 23 at 22–23.

That is, Plaintiff does not base her claim for malicious abuse of process on a specific irregularity or impropriety in Defendants' litigation or immediate pre-litigation conduct suggesting extortion, delay or harassment with regard to the companion case, but instead asserts this claim on the basis of the filing of the complaint itself. *See id.* at 22 ("Optum filed this complaint . . . without a reasonable belief in the validity of the allegations of fact or law underlying the complaint."); ECF No. 64 at 20 ("Optum has used this, and other lawsuits, to accomplish an illegitimate end . . . "). The Court will therefore analyze only whether or not Plaintiff has adequately alleged that the complaint in the companion case is not based on probable cause.

On its face, Defendants' suit is simply for the enforcement of a contract executed by Plaintiff. *See* 1:20-cv-00900 MIS/GJF ECF No. 1. Both parties agree that a contract was executed in 2012, and that Plaintiff now works for a competitor in the relevant area. *See* 1:20-cv-00900 MIS/GJF ECF Nos. 1 at 4;  23 at 4. Although the parties dispute the enforceability of the contract and even the corporate identity of the now-existing parties, this disagreement about the law and facts of the case in and of itself is insufficient to show malicious abuse of process. *See Durham*, 204 P.3d at 26 (malicious abuse of process must be narrowly construed).

Nor is it sufficient that Plaintiff asserts "[i]f the 2012 Noncompete Agreements are found to be unenforceable on summary judgment or by a jury, Optum's misuse of the legal process to restrict competition in violation of New Mexico law could give rise to claims for malicious abuse of process." ECF No. 64 at 20. "Probable cause—the reasonableness of inferences of guilt—is to be judged by facts as they appeared at the time, not by later-discovered facts." *Weststar Mortg. Corp. v. Jackson*, 61 P.3d 823, 831 (N.M. 2002) (quoting Dan B. Dobbs, The Law of Torts § 430, at 1216 (2000)). That is, probable cause is a determination based on facts as they appeared prior to filing a case, not as they appear after its resolution. Plaintiff therefore cannot base a claim for malicious abuse of process on facts that will appear obvious *after* the filing of the case, let alone after the resolution of the case. *See id.* Indeed, enforcement of a pre-2015 physician noncompete agreement is not presumptively illegitimate under New Mexico law. *See*, *e.g.*, *KidsKare, P.C. v. Mann*, 350 P.3d 1228, 1231 (N.M. App. 2015) (enforcing noncompete agreement against physician); *OptumCare Mgmt., LLC v. Gutierrez-Barela*, No. 1:20-cv-00474 RB/SCY, 2021 WL 5578897, at *7 (D.N.M. Nov. 29, 2021) (declining

5

to find that New Mexico courts would not enforce similar 2012 physician noncompetition agreement).

Even to the extent that Defendants may have had a malicious motivation for filing the companion case, this is insufficient to sustain a claim for malicious abuse of process. *See LensCrafters*, 282 P.3d at 766. Thus, neither Plaintiff's assessment of Defendants' beliefs or intentions, nor her prediction of the probable outcome of the instant case, adequately state a claim for malicious abuse of process. That is, even accepting Plaintiff's allegations as true, Plaintiff could not demonstrate that Defendants filed their claims without probable cause. *C.f. Allianz Life Ins. Co. of N. Am. v. Richards*, No. 1:05-cv-0256 JCH/RLP, 2007 WL 9734302, at *6 (D.N.M. Mar. 30, 2007). The Court will therefore grant Defendants' Motion as to this counterclaim.

## II.     Plaintiff's Claim Under the New Mexico Antitrust Act

Defendants argue that Plaintiff's claim under the New Mexico Antitrust Act is time-barred, and that her allegations fail to meet the requirements of the Act. ECF No. 61 at 8. In particular, Defendants contend that Plaintiff fails to identify a second actor who engaged the Defendants to restrain competition, Plaintiff does not allege conduct that rises to an unreasonable restraint on competition, and Plaintiff does not have standing to bring an antitrust claim based on her own injuries as a healthcare provider as opposed to a patient. *Id.*

Plaintiff, in turn, maintains that because her noncompetition agreement was assigned to Defendants in 2019, her suit is within the four-year statute of limitations. ECF No. 64 at 2. She further argues that because she alleges her agreement was assigned as part of a bundle of "a large group of physician noncompete agreements" which

6

significantly restrained competition, her claims are a proper subject of the New Mexico Antitrust Act. *Id.* at 8.

### A. Applicable Antitrust Law

Under the New Mexico Antitrust Act, "[e]very contract, agreement, combination or conspiracy in restraint of trade or commerce, any part of which trade or commerce is within [New Mexico], is unlawful." N.M. Stat. Ann. § 57-1-1 (1978). Courts construe the statute in harmony with federal antitrust law. *Romero v. Philip Morris Inc.*, 242 P.3d 280, 291 (N.M. 2010). Under Section 1 of the Sherman Act, which prohibits restraint of trade at the federal level, a plaintiff must show (1) concerted action, (2) by two or more persons, (3) which unreasonably restrains commerce. *Id.* at 289 (quoting *In re Med. X-Ray Film Antitrust Litig.*, 946 F. Supp. 209, 215 (E.D.N.Y. 1996)); *see also* 15 U.S.C. § 1. Concerted action occurs when two or more entities that had previously pursued their own separate interests combine to act as one for their common benefit, in the restraint of trade. *Gregory v. Fort Bridger Rendezvous Ass'n*, 448 F.3d 1195, 1200 (10th Cir. 2006) (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984)).

Section 1 does not prohibit unilateral action, regardless of its possible anti-competitive effects, on the basis that the marketplace benefits from multiple independent nexuses of decision-making. *Id.* In general, a corporation cannot conspire with its own employees, unless employees have an "'independent personal stake' and thus stand to benefit from conspiring with the corporation to restrain trade." *Motive Parts Warehouse v. Facet Enters.*, 774 F.2d 380, 387 (10th Cir. 1985).

"The threshold inquiry in analyzing whether a plaintiff may pursue an antitrust claim is that of 'antitrust injury.' An antitrust injury is an injury of the type the antitrust laws were

7

designed to prevent and that flows from that which makes defendants' acts unlawful." *Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1267 (10th Cir. 2006) (internal citations and quotation marks omitted). To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must do more than cite relevant antitrust language to state a claim for relief. A plaintiff must allege sufficient facts to support a cause of action under the antitrust laws." *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1024 (10th Cir. 1992) (internal citations omitted). A bare assertion of conspiracy will not suffice to state an antitrust claim. *See Twombly*, 550 U.S. at 556.

Prior to 2015, physician non-compete agreements were enforceable in New Mexico. *See KidsKare*, 350 P.3d at 1231. As of 2015, however, certain physician non-compete agreements are unenforceable in New Mexico. In particular,

> [a] non-compete provision in an agreement, which provision restricts the right of a health care practitioner to provide clinical health care services in [New Mexico], shall be unenforceable upon the termination of:
>    (1) the agreement;
>    (2) a renewal or extension of the agreement; or
>    (3) a health care practitioner's employment with a party seeking to enforce the agreement.

N.M. Stat. Ann. § 24-1I-2(A) (1978). The 2015 statute "does not apply to agreements between health care practitioners who are shareholders, owners, partners or directors of a health care practice." N.M. Stat. Ann. § 24-1I-5(A) (1978).

### B. Whether Plaintiff's Claims are Time-Barred

A plaintiff has four years to assert a claim for a violation of the state antitrust statute. N.M. Stat. Ann. § 57-1-12 (1978). Here, Plaintiff claims in her Answer she was previously a "physician owner" of ABQ Health Partners, and that she executed the subject noncompetition agreement in 2012 with HealthCare Partners LLC as part of its purchase

8

of—and the attendant sale of Plaintiff's ownership interest in—ABQ Health Partners. 1:20-cv-00900 MIS/GJF ECF No. 23 at 3. Plaintiff later alleges that an earlier, separate purchaser, DaVita Inc., "acquired Healthcare Partners LLC in or around November 2012," and that only later, in 2019, did "United/Optum acquire[] certain components of DaVita, including ABQ Health Partners." *Id.* at 12. Defendants claim, meanwhile, that DaVita, Inc. is merely a prior name of the corporation, stating that "HealthCare Partners, LLC, through a series of name changes, is now known as OptumCare Management, and is the original and accurate party to the 2012 Member Noncompetition Agreement." ECF No. 70 at 5–6.

Plaintiff now clarifies that the basis of her antitrust claim is the alleged 2019 transaction. ECF No. 64 at 8. Although Defendants maintain the ownership of the contract has actually remained the same—subject merely to name changes—for purposes of resolving this Motion, the Court will take Plaintiff's allegation that Defendants acquired ABQ Health Partners in 2019 as true. *See* ECF No. 70 at 5; 1:20-cv-00900 MIS/GJF ECF No. 23 at 12; *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. The Court will thus decline to treat Plaintiff's state antitrust claim, as it relates to the 2019 transaction, as time-barred.

### C. Whether Plaintiff Has Adequately Alleged Concerted Action

As stated above, for purposes of resolving this Motion, the Court will take as true Plaintiff's allegations that "DaVita Inc. [] acquired Healthcare Partners LLC in or around November 2012," and that "United/Optum acquired certain components of DaVita, including ABQ Health Partners," in 2019. 1:20-cv-00900 MIS/GJF ECF No. 23 at 12. The

Court will also take as true Plaintiff's claim that Defendants were assigned her non-compete agreement without her consent. *Id.* at 17.

Plaintiff states that the concerted anticompetitive action she complains of in her counterclaim is "[t]he 2019 contract between DaVita and Optum attempting to bundle and sell a collection of 2012 physician noncompete agreements . . . ." ECF No. 64 at 8. Indeed, her Answer alleges that

> . . . since purchasing DaVita in 2019, Optum's business strategy is to use the 'Evergreen' 2012 Noncompetition Agreements to prevent its employed physicians and their patients from having a choice to leave Optum's integrated health insurance and medical service business, thus trapping those patients and the revenues they generate within the United/Optum health system.

1:20-cv-00900 MIS/GJF ECF No. 23 at 17. Plaintiff further alleges that this strategy "causes New Mexico physicians to relocate out-of-state, and impairs the ability of New Mexico citizens to obtain prompt and adequate health care." *Id.* at 19.

However, Plaintiff's Answer itself does not reveal whom Plaintiff alleges Defendants are conspiring *with.* Whereas Section 2 of the Sherman Act—which prohibits monopolies—can be violated by a single economic unit without requiring an agreement, Section 1—which prohibits unreasonable restraints on trade, such as Plaintiff has alleged here—requires a "contract, combination . . . or conspiracy . . . ." *Id.* 15 U.S.C. §§ 1–2. Plaintiff contends that the Sherman Act prohibits certain noncompetition agreements, but in fact Section 1 does not generally proscribe unilateral anti-competitive conduct. *Cohlmia v. St. John Med. Ctr.*, 693 F.3d 1269, 1280 (10th Cir. 2012). For this reason, courts will only consider whether a given agreement constituted an unreasonable restraint of trade *after* such agreement is established. *Id.*

10

Here, Plaintiff's Answer does not allege the existence of an agreement to sell bundled physician noncompetition contracts in 2019. *See generally* 1:20-cv-00900 MIS/GJF ECF No. 23. To the extent that the Answer mentions a contract or agreement, such mention is limited to the initial sale of ABQ Health Partners to Healthcare Partners LLC in 2012. *Id.* at 10-12. Any claim based on such sale, including application of antitrust law to the resulting noncompetition agreement, would be barred by the statute of limitations. N.M. Stat. Ann. § 57-1-12 (1978).

Plaintiff now claims, in her response, that it is Defendants' 2019 contract with DaVita, Inc. that unlawfully restrained trade. ECF No. 64 at 8. In particular, she now argues, without citation to her Answer, that her "allegations suggest a horizontal agreement—limiting the ability of direct competitors to compete against each other n providing pediatric and primary care medical services" and that "the buying and re-selling of a large number of physician noncompetition agreement[s] which collectively lock up a significant number of primary care and pediatric physicians in a medically underserved state . . . may result in a significant enough anticompetitive effect to violate antitrust laws . . . ." *Id.* at 11–12.

To the extent that Plaintiff now argues that the 2019 purchasing agreement between her employer and the purchaser constitutes the anti-competitive agreement at issue, however, such claims do not appear on the face of the Answer, which states only that "United/Optum acquired certain components of DaVita, including ABQ Health Partners." 1:20-cv-00900 MIS/GJF ECF No. 23 at 12. This allegation, which does not even allege conspiracy with another actor or ensuing parallel conduct, is plainly insufficient under the *Iqbal/Twombly* plausibility pleading standard. *Twombly*, 550 U.S. at

11

556 ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice."). The Court will therefore grant the Motion as to this counterclaim.

### III. Plaintiff's Claim of Unfair Competition

Next, Defendants argue that Plaintiff's common law claim for unfair competition also fails, as it does not contain a "particular common law claim falling under the Restatement (Third) [of] Unfair Competition" upon which New Mexico courts rely. ECF No. 61 at 15. Defendants also contend that New Mexico courts have already determined that noncompetition agreements do not violate state common law. *Id.* at 16. Plaintiff, meanwhile, maintains that her claim for unfair competition falls under the residual category of the restatement, which "contemplates a fluid" standard that "defies a definitive test." ECF No. 64 at 15.

Whereas the purpose of antitrust law is to prevent restraints on competition, the purpose of barring unfair competition is discouraging unfair *methods* of competition. *See Midwest Underground Storage, Inc. v. Porter*, 717 F.2d 493, 497 (10th Cir. 1983). In the absence of controlling state law, courts indeed rely upon the Restatement (Third) of Unfair Competition to determine the elements of New Mexico common law unfair competition. *See Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 708 F. Supp. 2d 1209, 1253 (D.N.M. 2010) (collecting cases). The Restatement provides for liability for—among other things—deceptive marketing, infringement of trademark, and misappropriation of trade secrets, but also for "other acts or practices of the actor determined to be actionable as an unfair method of competition, taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public." Restatement (Third) of Unfair Competition § 1(a)(3) (Am. L. Inst. 1995); *see also Purvis Indus., LLC v. Spokane*

12

*Indus., Inc.*, No. 1:18-cv-00585 RB/LF, 2019 WL 1992911, at *9 (D.N.M. May 6, 2019); *OptumCare Mgmt., LLC v. Grenemyer*, No. 1:21-cv-00982 RB/LF, 2022 WL 16744397, at *3 (D.N.M. Nov. 7, 2022). A common law claim for unfair competition, unlike an antitrust claim of restraint of trade, therefore does not rely on the existence of a particular agreement, but can instead capture more general unfair practices. *See, e.g.*, *New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 54 F. Supp. 3d 1189, 1236 (D.N.M. 2014) (declining to dismiss claim for unfair competition even while dismissing antitrust claim).

Under New Mexico common law, restrictive covenants in employment contracts are enforceable when the restraints imposed therein are reasonable, and where "they are not against public policy, and any detriment to the public interest in the possible loss of the services of the covenantor is more than offset by the public benefit arising out of the preservation of the freedom of contract." *Lovelace Clinic v. Murphy*, 417 P.2d 450, 453–54 (N.M. 1966). "Whether there is a reasonable restraint depends on the facts of a particular case . . . . In determining reasonableness, courts consider such factors as the nature of the business, its location, the parties involved, the purchase price, and the main object of the restriction." *Bowen v. Carlsbad Ins. & Real Est., Inc.*, 724 P.2d 223, 225 (N.M. 1986) (internal citation omitted).

Here, Plaintiff alleges that Defendants purchased ABQ Health Partners and were assigned her noncompetition contract in 2019. 1:20-cv-00900 MIS/GJF ECF No. 23 at 7, 12. Plaintiff alleges that due to this change in ownership, "clinics were required to cut staff and make other budget cuts which negatively impacted patient care." *Id.* She further alleges that due to her complaints about the declining quality of patient care, "Optum

13

retaliated against her first [by] demoting her and then [by] forcing her to resign," despite her being subject to a noncompetition agreement which would potentially prohibit her from practicing medicine in the area post-employment. *Id.*

Plaintiff claims that Defendants' management of the clinic caused understaffing, the resignation of multiple other clinicians, and systematic discrimination against low-income Medicaid-eligible patients, such that she was no longer able to continue working for Defendant while maintaining compliance with medical ethics. *Id.* at 13. Plaintiff further alleges that Optum is a subsidiary of a "national healthcare conglomerate" that "generated approximately $242 billion [] in revenue in 2019" and is "the world's largest healthcare company by revenue." *Id.* at 18. Finally, Plaintiff alleges that Defendants "engaged in a pattern of harassment and threats against [Plaintiff] and other Albuquerque physicians as part of a broader strategy to [intimidate] and deter physicians from leaving Optum and to limit health care options for New Mexico patients." *Id.* at 19–20.

Defendants argue that Plaintiff fails to either invoke a particular enumerated common law claim or state an adequately specific claim under the residual category. ECF No. 61 at 15. Plaintiff's Answer does allege an extreme disparity in market power between the parties, a systemic action against an entire group of physicians, the impossibility of continuing her only permissible local employment without endangering her medical license via unethical conduct, and a dearth of physicians in the state. *See generally* 1:20-cv-00900 MIS/GJF ECF No. 23. However Plaintiff, in her Answer, does not indicate which specific conduct she claims constitutes unfair competition, merely stating in her counterclaim that "[t]he conduct by Optum described above constitutes common law unfair competition . . . ." and incorporating the allegations from the entire pleading into

her counterclaim. *Id.* at 21. While Plaintiff maintains that the residual category of the restatement, which "contemplates a fluid" standard that "defies a definitive test," ECF No. 64 at 15, her current pleading is insufficient to state a claim under even this standard. *Twombly*, 550 U.S. at 555; *see also Gutierrez-Barela*, 2022 WL 4079397, at *4 n.4. The Court therefore finds that Plaintiff does not state a plausible claim for unfair competition under the residual category. *Cf. New Mexico Oncology v. Presbyterian Healthcare Servs.*, 418 F. Supp. 3d 826, 831 (D.N.M. 2019), *aff'd sub nom. New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 994 F.3d 1166 (10th Cir. 2021) (declining to dismiss where plaintiff asserted unfair competition arising out of defendants' alleged misrepresentation to and coercion of patients, interference with referrals to plaintiff, and the illegal receipt and sale of medications).

The Court will thus grant Defendants' Motion as to this counterclaim. However, given the circumstances, the Court will allow Plaintiff 30 days to amend her answer as to this counterclaim only. *See* Restatement (Third) of Unfair Competition § 1(a)(3) (Am. L. Inst. 1995); *Purvis*, 2019 WL 1992911, at *9 (liability attaches under residual category of unfair competition where "conduct is likely to interfere in a substantial manner with the ability of prospective purchasers to choose on the merits of the competing products"); *see also Bowen*, 724 P.2d at 225 (courts consider numerous factors in determining reasonableness of noncompetition agreements); *Lovelace*, 417 P.2d at 453–54 (noncompetition agreements are enforceable where not against public policy).

### IV.   Plaintiff's Claim of Tortious Interference

Defendants argue that Plaintiff has failed to adequately allege tortious interference with either an existing contract or a prospective business relationship. ECF No. 61 at 17.

In particular, Defendants contend Plaintiff has failed to identify either a specific existing contract or a particular potential business relationship, and that she fails to sufficiently allege interference with improper means or motive. *Id.* at 18–19. Plaintiff, meanwhile, maintains that she has alleged anticompetitive and unfair conduct that can "serve as the factual basis for tortious interference, whether existing or prospective." ECF No. 64 at 19. Plaintiff further contends that improper means would be demonstrated if the Court or a jury find that the 2012 noncompetition agreement was unenforceable. *Id.* at 19–20.

New Mexico has adopted the definition of the tort of interference with contracts found in the Restatement (Second) of Torts, which states that

> One who intentionally and improperly interferes with another's prospective contractual relation . . . is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
> (b) preventing the other from acquiring or continuing the prospective relation.

Restatement (Second) of Torts § 766B (Am. L. Inst. 1965); *see also New Mexico Oncology*, 54 F. Supp. 3d at 1227. The mere enforcement of a contract is not sufficient to state a claim for tortious interference. However, for purposes of resolving this motion, the Court must take as true Plaintiff's allegations that the noncompetition contract is unenforceable due to an improper assignment, and that Defendants were aware of this improper assignment. 1:20-cv-00900 MIS/GJF ECF No. 23 at 4, 17, 21.

"An interest in a contract terminable at will is primarily an interest in future relations between the parties when the party has no legal assurance of the relation. For that reason, interference with these contracts is closely analogous to interference with

prospective contracts." *Kelly v. St. Vincent Hosp.*, 692 P.2d 1350, 1356 (N.M. Ct. of App. 1984); *see also Gutierrez-Barela*, 2022 WL 4079397, at *3 (D.N.M. Sept. 6, 2022) ("As [plaintiff] advances no argument to support a finding that [defendant] has interfered with anything but at-will doctor-patient relationships . . . the Court will . . . apply an analysis for tortious interference with prospective contractual relations."). Generally, the relationship between a doctor and a patient is at-will, so New Mexico courts apply the "means or motive" analysis to determine whether there was tortious interference. *Id.* Improper means of interference may include "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood," though this list is not definitive. *M & M Rental Tools, Inc. v. Milchem, Inc.*, 612 P.2d 241, 246 (N.M. Ct. of App. 1980) (citing *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 582 P.2d 1365 (1978)). Improper motive for interference refers to a motive "solely to harm" plaintiff. *Id.*

Plaintiff argues that if the noncompetition agreement is later found unenforceable, then "Optum's conduct in using the agreements to restrict competition would demonstrate improper means." ECF No. 64 at 20. But a case which is merely lost, as opposed to frivolously *filed* in the first place, cannot constitute "unfounded litigation" sufficient to constitute tortious interference. *See M & M*, 612 P.2d at 246; Restatement (Second) of Torts § 674 (1977) (requiring that a party act "primarily" for a purpose other than that of obtaining the relief requested, and that the unfounded proceedings have already been terminated in favor of plaintiff). Plaintiff also admits that Defendants lack improper motive, as they seek to enforce the 2012 noncompetition agreement as opposed to seeking solely to harm her. *See, e.g.*, ECF No. 64 at 20. The Court therefore finds that Plaintiff does not

17

state a plausible claim for tortious interference. The Court will thus grant Defendants' Motion as to this counterclaim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Partially Dismiss Counterclaims of Ximena Galarza-Rios, MD, ECF No. 61, is **GRANTED IN PART**.

**IT IS THEREFORE ORDERED** that Plaintiff's counterclaim II for tortious interference with existing contract and prospective business relations is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's counterclaim III for unfair competition is **DISMISSED WITHOUT PREJUDICE** to filing an amended counterclaim by February 8, 2023.

**IT IS FURTHER ORDERED** that Plaintiff's counterclaim IV for violation of the New Mexico Antitrust Act is **DISMISSED WITH PREJUDICE.**

**IT IS FINALLY ORDERED** that Plaintiff's counterclaim V for malicious abuse of process is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED**.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE